JOHN H. REYNOLDS *v.* MAYOR AND TRUSTEES OF SHREVEPORT.

The ordinances of an incorporated town directing work to be done upon streets, and not involving the necessity of giving out obligations beyond what the current revenues of the town may meet, are not within the prohibitory Act of the Legislature of March 15th, 1855, which declares that the authorities shall not contract any debt or liability without providing, in the ordinance creating the debt, the means of paying the principal and interest.

Where it is alleged that a municipal corporation has executed a lawful power in an injurious and malicious manner, the presumption will be in favor of the propriety and good faith of the acts of the corporation, and a complainant must make out a clear case of willful oppression to obtain relief from the courts.

APPEAL from the District Court of the Parish of Caddo, *Creswell*, J.

*A. B. Levisee* and *Land & Winans*, for plaintiff and appellant. *Landrum & Williamson* and *J. W. Jones*, for defendant.

SPOFFORD, J. The plaintiff, owner of three improved lots fronting upon Texas street in the town of Shreveport, sued the town for a large amount of damages alleged to have been sustained by him, in consequence of an ordinance passed by the Mayor and Trustees, in the year 1856, fixing the grade of Texas street ; he averred that, in pursuance of the said ordinance, the street in front of his lots had been dug down several feet, leaving his buildings high above the present level of the street, causing the side-walk in front of them to crumble away, thus rendering them difficult of access, destroying or impairing his rents, and making it necessary for him to go to great expense in excavating his lots and lowering his buildings, so as to accommodate them to the new grade.

He alleged that his property had in this manner, been expropriated without process of law, and his vested rights violated, and that he was entitled to compensation in damages. .

He also alleged that the grade of Texas street had been fixed by a previous ordinance of the same corporation, in the year 1846, which was in the nature of a contract, upon the faith of which, as establishing a permanent grade, he bought the property injured, and that the town was therefore liable to pay him the damages caused by the new grade, in consequence of their breach of contract.

He further alleged that the ordinance of 1856 fixing the new grade, and the works done in pursuance thereof, were an unwise, reckless and useless exercise of power not legally vested in the Mayor and Trustees, who acted in the premises without due regard to his rights, or to the interest of the public.

The defendants pleaded a general denial. There was a judgment in their favor, and the plaintiff has appealed.

From the proof it is indubitable that the plaintiff has been subjected to some present inconvenience, loss and expense in consequence of the new grade. Whether, on the whole, the projected improvement of Texas street, of which this change of grade is the commencement, will result in ultimate damage to the plaintiff's interests, is left more in doubt. But, for the purpose of our investigation, we may assume that he is damaged. It is not every act of man, causing damage to another, which obliges the former to repair it, but only every faulty or wrongful act. C. C. 2294 ; 5 Marcadé, 266 ; *Donovan* v. *New Orleans*, 11 An. 711. If, therefore, this municipal corporation, in changing the grade of Texas street, acted in pursuance of a power vested in them by law, and acted without fault, the plaintiff

has no ground of action against them, even if he has suffered a loss. In such case it would be a loss without an injury.

We have, then, first to ascertain the powers of the Mayor and Trustees of Shreveport with regard to streets. They are of the most ample description. That town was incorporated by the Act of March 20th, 1839. Sess. Acts, 200. By the 6th section of that Act the Trustees, or a majority of them, one of whom shall be the Mayor, are empowered "from time to time to make such by-laws in writing, not inconsistent with the laws and Constitution of this State, or of the United States, as they may deem proper, in relation to public markets in said town, and relative to the streets, alleys and highways therein, draining, filling up and keeping in order and improving the same." A new Act of incorporation was passed and approved March 16th, 1850, (Sess. Acts, 123,) by the 8th section of which it was again declared "that the Trustees, or a majority of them, one of whom shall be the Mayor, shall form a quorum for the transaction of business, shall meet at their own adjournments, shall have powers, from time to time, to enact and provide for the promulgation of such by-laws and ordinances, not inconsistent with the laws and Constitution of the State, and the United States, as they may deem proper, in relation to the public markets of said town, to the landings, streets, alleys and highways therein, and to the opening, widening, draining, filling up, keeping in order and improving the same, to nuisances in general, to the town patrol, to the police of slaves and public houses, and to the assize of bread and meat, and they shall have power generally to made all such other rules and regulations as may relate to the good ordering, government, improvement and the police of the town."

A power "to make ordinances in relation to the streets, to the opening, widening, draining, filling up, keeping in order and improving the same," necessarily implies a power to fix the grade thereof, and to level them to that grade. In a town built, like Shreveport, upon an uneven bluff, the exercise of such a power will naturally leave some lots above and some below the artificial grade. And, if the proprietors of adjacent lots wish to have them upon a level with the street thus artificially graded, the lots must be excavated or filled up as the case may be. Now, if the town is liable for all damages to adjoining proprietors, in consequence of exercising, no matter how discreetly, its legal prerogative of fixing the grade of a street, it would follow that the town should pay every owner of a lot the cost of raising or lowering it to the level of the grade. We are not aware that such a doctrine was ever contended for. Stripped of all the aggravating accompaniments of expropriation, breach of contract, and wanton abuse of power, the proposition must be admitted that the town of Shreveport, discreetly exercising its legal right to grade and improve its streets, is not bound to grade and improve, or pay for grading and improving the adjacent lots of private persons, so as to make them correspond with the street. It would require a special law to make a municipal corporation, in the judicious exercise of an undoubted power thus conferred upon it by the Legislature, liable for such consequential losses by individual proprietors. As was said in the case of *Radcliffe's Executors* v. *Mayor, etc., of Brooklyn*, 4 Comstock, 207 : "The opening of a street in a city is not necessarily an injury to the adjoining land-owners. On the contrary, it is in almost every instance a benefit to them. The damage which they sometimes sustain, because the level of the street does not correspond with the level of their land, is usually more than compensated by the increased value which the property acquires from having a new front on a street. In some instances the land-owner

REYNOLDS
v.
SHREVEPORT

will suffer a heavy loss, and this case may perhaps be one of the number ; but it is *damnum absque injuriâ*, and the owner must bear it. He often gets the benefit for nothing, when the value of his land is increased by opening or improving a street or highway ; and he must bear the burden in the less common case of a depreciation in value in consequence of the work. *     *     *     *     *     *
Whether in cases of this kind the Legislature ought, as a matter of equity, to provide for the payment of such damages as are merely consequential, we are not called upon to decide. It is enough for us to say that a law which makes no such provision is not for that reason unconstitutional and void." In the same case it was said that " there is a class of cases directly on the point in judgment, which hold that persons acting under an authority conferred by the Legislature to grade, level and improve streets and highways, if they exercise proper care and skill, are not answerable for the consequential damages which may be sustained by those who own lands bounded by the street or highway. And this is so, whether the damage results either from cutting down or raising the street ; and although the grade of the street had been before established, and the adjoining land-owners had erected buildings with reference to such grade." The learned Judge who pronounced the opinion, (Ch. J. Bronson,) after declaring that this doctrine had never been denied in any well considered judgment, cited in support of it 4 T. R. 794 ; 2 B. & C. 703 ; 2 Hill, 466 ; 1 Denio, 595 ; 3 Barb. 459 ; 9 Watts, 382 ; 8 Watts & Sarg. 85 ; 6 Wheat. 593 ; 17 Wend. 667.

We find nothing in our law inconsistent with the principle upon which the case of *Radcliffe*, in 4th Comstock, is grounded. The Article 663 of the Civil Code does not relate to the powers of cities with regard to streets which they are authorized to open or improve.

But their power is not absolute, arbitrary and unlimited. They may not expropriate lands, or divest vested rights, without adequate compensation previously made. But there is no ground for contending that there was any expropriation or divestiture here. The corporate authorities never entered upon the plaintiff's lots at all. They have not interfered with his title or his possession. No part of his property has been taken for the public use. The damage complained of is not the result of any divestiture of rights belonging to the plaintiff, but is merely consequential upon the exercise of a power specially granted by law to the town authorities over a street dedicated to the public, and of which the authorities have the exclusive administration.

The plaintiff, however, contends that the power was exercised illegally in this instance because it was in violation of a tacit contract resulting from a previous ordinance fixing a grade for the same street in the year 1846, which was a finality. No contract between the town and the plaintiff or any of the authors of his title is, however, proven. Nor would the rejected evidence have been sufficient to prove a contract which would bind the corporation not to change the grade of 1846. The grant of power in the legislative Acts already cited is, in its very terms, a continuing power, and not a power to be exhausted as soon as exercised. The Mayor and Trustees are authorized " from time to time" to make such ordinances relative to streets, etc., as they may deem proper. They did not declare the grade of 1846 to be a finality. And, if they had, the better opinion would seem to be that such a declaration, tying up the hands of their successors in violation of the legislative grant of an enduring power, would be void.

In the case of *Goszler* v. *the Corporation of Georgetown*, 6 Wheaton, 593, that corporation, under a legislative grant of power to make such ordinances as they

might judge necessary, for the graduation and leveling of the streets, &c., in 1799 exerted the power thus conferred, with regard to certain streets, and, at the same time, further ordained that the said level and graduation "should forever thereafter be considered as the true graduation of the streets so graduated, and be binding upon the corporation, and all other persons whatever, and be forever thereafter regarded in making improvements upon said streets,"

The plaintiff, *Goszler*, owned lots upon one of these streets, and made improvements according to the graduation fixed by the ordinance of 1799. Afterwards, in 1816, the corporation passed another ordinance, directing the level and graduation of this street to be altered ; and the commissioners appointed being about to cut down the street by the plaintiff's house, he enjoined them from proceeding, by a bill filed against them and the corporation. Upon a hearing, the bill was dismissed by the Circuit Court, and, upon appeal by the plaintiff to the Supreme Court of the United States, the decree was affirmed. C. J. Marshall, as the organ of the court, declared that the power to graduate the streets was a continuing power, and that the attempt of the corporation, in 1799, to restrain their successors from exercising it again, by holding forth promises to builders, transcended their authority. It is not necessary for us to go so far, in order to maintain the judgment in the present case.

The plaintiff here has alleged that the action of the Mayor and Trustees was unnecessarily and wantonly injurious to him. A municipal corporation may execute a lawful power in such an injurious and malicious manner, as to justify a claim for damages, as is shown by many precedents. But, when the subject-matter is within the scope of their corporate powers and duties, the presumption is ever in favor of the propriety and good faith of their conduct, and the complainant must make out a clear case of willful oppression to obtain relief from the courts. See *Police Jury of West Baton Rouge* v. *Bozman*, 11 An. 94 ; *Dubose* v. *Levee Commissioners*, Ib. 166–7 ; *Avery* v. *Police Jury*, 12 An. 554.

This presumption is founded in reason, as well as sanctioned by law. For the Trustees of a town are chosen by the citizens for the express purpose of regulating the streets, and have better means of judging concerning the wisdom of a proposed improvement, than a court is likely to obtain from the mere opinions of witnesses. Their interests are generally identical with those of the property holders and the public, and they have no motive to act oppressively or unjustly.

The opinions of witnesses in this case as to the best mode of draining and improving Texas street (which seems to have been the main object of the Trustees), are somewhat various and discordant. There is no shadow of ground to suppose that the Mayor and Trustees intended maliciously to injure the plaintiff or sought any other end than the improvement of the town. The evidence is wholly insufficient to enable us to say that the new grade was as alleged, unwise, uncalled for, reckless, and unnecessarily destructive of the plaintiff's interest. And it is some corroboration of the theory that it was not, to find that the plaintiff has not sustained by any evidence his allegation that he protested against the proposed grade before it was accomplished. This would not, of itself, debar him from claiming damages, but it is a circumstance proper to be considered in weighing the evidence upon this branch of his complaint.

Finally, it is urged in argument, though not alleged in the pleadings, that the town authorities were trespassers *ab initio*, because their ordinances establishing the grade and ordering the work to be executed, were null and void. They are said to be in contravention of a prohibitory law, because they involved the con-

tracting of a debt without at the same time providing the means for paying it. By the 4th section of the Act of March 15th, 1855 (Session Acts, p. 326), it was ·provided, "that the police juries of the several parishes and the constituted authorities of incorporated towns and cities in this State, shall not hereafter have power to contract any debt or pecuniary liability, without fully providing in the ordinance creating the debt, the means of paying the principal and interest of the debt so contracted."

The ordinances in question create no specific debt. But if *Lespard's* contract for doing the particular work complained of by the plaintiff, be regarded as a part of one of the ordinances, his work amounts only to the sum of $2,300 or $2,400, while the annual revenue of the town is shown to be about $10,000. The work upon these streets forms a part of the current expenses of the town. Ordinances directing work to be done upon streets and not involving the necessity of giving out obligations beyond what the current revenues of the town may meet, do not seem to us to be within the meaning of the prohibitory law relied upon by the appellant's council.

It is, therefore, ordered and decreed, that the judgment of the District Court be affirmed, with costs.