No. 743.

29  673
45  394

J. D. WILSON VS. CITY OF SHREVEPORT.

The officers of a municipal corporation can not create obligations binding on the corporation, unless their power to do so is express; or necessarily, or rationally implied by the powers that are expressly granted to them in the charter of the corporation, or is essential to the objects for which the corporation was created.

The power granted by the charter of a corporation to give such bonds as might be necessary in the conduct of its litigation, or in the current administration of its affairs, does not authorize the issue of bonds for raising money.

A negotiable form will not impart validity, even in the hands of a *bona fide* holder for value, of an obligation of a corporation which it had not power to. contract.

The officers of a municipal corporation can create no debt against the corporation, unless the ordinance creating the debt imposes a tax for its extinguishment.

APPEAL from the Tenth Judicial District Court, parish of Caddo. *Looney*, J.

*Land & Taylor*, for plaintiff and appellee.

*T. Alexander*, City Attorney, for defendant.

The opinion of the court was delivered by

MARR, J. Plaintiff seeks to recover of the city of Shreveport thirty-five hundred dollars, on seven bonds for five hundred dollars each, dated the first of September, 1866. He alleges that these bonds were issued to R. D. Sale, in part payment for stock in the Shreveport Gas-Light Company purchased by the city; and that he acquired them of Sale, in good faith, for a valuable consideration, before maturity.

The city answers that these bonds were issued without authority, and that, having been issued illegally, they are absolutely null and void.

There was judgment in favor of plaintiff for the amount sued for, with interest from the first of September, 1876. The city appealed; and plaintiff, in answer to the appeal, prays that the judgment be so amended as to order the amount to be paid by preference out of the revenues derived from taxation, according to the tenor of the bonds and as prayed for in his petition.

By ordinance of the third of July, 1866, the city government provided for the issue of one hundred and fifty thousand dollars in bonds, to be of five hundred dollars each, one hundred redeemable in five years, one hundred in ten years, and one hundred in fifteen years, bearing interest at eight per cent, payable annually, to be transferable by indorsement; none of said bonds to be sold for less than ninety cents on the dollar.

The second section provided for the extinguishment of these bonds, by setting apart ten thousand dollars each year, of the revenues derived from the wharf, to constitute a sinking fund.

On the ninth of July this ordinance was so amended as to set aside ten thousand dollars annually, from the annual taxes of the city, in lieu of the same amount set aside from the wharfage fund.

43

On the eleventh of August an ordinance was passed providing that thirteen thousand dollars of the city bonds, one half or more to run for five years and the balance to run for ten years, be appropriated, together with $825 in city change, for the purchase of $12,500 of stock in the Shreveport Gas-Light Company, the bonds to be paid out at ninety cents on the dollar, the change notes at par; and a committee was appointed to make the purchase.

By a memorandum furnished by a clerk of the administrator of accounts it appears that thirteen of these bonds, Nos. 68 to 80 inclusive, having ten years to run, were issued on the first of September, 1866, to R. D. Sale, secretary of the Shreveport Gas-Light Company, of which Nos. 75, 76, 77, 78, and 80 were retired, when or how it is not shown, leaving "afloat," in the language of the memorandum, Nos. 68 to 74 inclusive and No. 79. The seven held by plaintiff, and sued on, are Nos. 68 to 74 inclusive.

The only testimonial proof is that of Leonard, who was city controller on the first of September, 1866; and he says these bonds were a part of a series issued by the city in payment of stock purchased in the Gas-Light Company.

The bond copied in the transcript, which differs from the others only in the number, certifies that the mayor and trustees are indebted to R. D. Sale or bearer in the sum of five hundred dollars, payable at the controller's office, which sum the mayor and trustees promise to pay to Sale or bearer, "ten years from the date of this bond;" and also to pay interest annually from date, at eight per cent. "For faithful payment of this bond the city has pledged all the revenues derived from the taxation of real estate and personal property within the city." Dated the first of September, 1866, signed by the mayor and controller, and countersigned by the committee on finance.

The only question to be solved is as to the validity of these bonds as obligations of the city of Shreveport; whether the municipal government had legal power and authority to bind the corporation by these instruments.

Dillon on Municipal Corporations, chapter v., p. 173, sec. 55, says: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation—not simply convenient, but indispensable."

This is so manifestly true that we shall not cite authorities in support of it; and it is much to be regretted that so many of those charged with the administration of municipal corporations, and some judicial tribunals,

sitting in judgment upon their acts, have not acknowledged and recognized this doctrine to its full extent, and have not observed and enforced it inflexibly and unqualifiedly. It remains for us to review the several acts of the Legislature incorporating the town of Shreveport and amending the charter, in order to ascertain whether these bonds were issued in the lawful exercise of power and authority conferred upon the corporation by the Legislature.

The original charter of the town of Shreveport was by act of 1839, page 200. The word "bond" does not occur in this act, but section four made it the duty of the mayor "to sign all *notes or other obligations* binding the corporation."

The power of direct taxtion was limited, by section six, to one thousand dollars in any one year; and the trustees were also empowered to levy and collect, by just and equitable apportionment, a tax on certain personal property and callings and pursuits.

The charter was amended by act of 1850, page 123; and by one of the clauses of section one the mayor and trustees were authorized to "give bonds and receive bonds, which shall be as effectual in law as other bonds given under the laws of this State."

This clause was repeated in the act of 1853, which simply amended and re-enacted section one of the act of 1850, by omitting the limitation of direct taxation to two thousand dollars, fixed by the act of 1850.

Section four of the act of 1850 repealed that clause of section four of the act of 1839 which made it the duty of the mayor "to sign all *notes or other obligations* binding the corporation." Subsequent acts make no mention of *bonds* or *notes* or *other obligations*. The act of 1854, page 165, relates to the establishment of work-houses; that of 1857, page 216, authorizes the imposition of fines and the levy of taxes on certain property and pursuits; that of 1859, page 120, relates to the officers of the corporation, the manner of collecting taxes, the levying of taxes for paving or macadamizing the streets, the establishment of hospitals, pest-houses, cemeteries, etc.; the two acts of 1860, one, at page fifty-nine, authorizing the mayor and trustees to sue and be sued as "the city of Shreveport," the other, page 106 *et seq.*, relating to the collection of municipal taxes; and the two acts of 1866, one, at page eighty, like that of 1852, page seven, relating to the establishment of ferries across the Red river, and the other, page 276, authorizing the mayor and trustees to purchase and hold, in fee simple, real estate outside the corporation for the use and benefit of the town.

The power to issue bonds, for the purpose of raising money, was not granted to the municipal government prior to the new act of incorporation in 1871, unless such power is deducible from section four of the acts of 1839 and 1850, respectively, or from section one of the acts of 1850

and 1853, respectively; the former making it the duty of the mayor to sign all *notes* or *other obligations* binding the corporation; the latter authorizing the mayor and trustees to *give* bonds and to *receive* bonds.

The duty imposed on the mayor to sign all *notes* or *other obligations* binding the corporation is in the section which is devoted to the powers and duties of the mayor. If, under the powers granted, *notes* or *other obligations* can be given binding the corporation, such *notes* or *obligations* must be signed by the mayor, the executive of the municipal government; but the section does not undertake to say what *notes* or *other obligations* the mayor may lawfully sign. The corporation is not bound by any unless they are signed by him.

The acts of incorporation, 1839, 1850, authorize the mayor and trustees to sue and be sued "in any and all manner of causes and actions; to acquire, hold, farm, lease, or convey any property, real or personal," and to compromise, arbitrate, or transact in regard thereto, and to erect public works and buildings. In some causes or actions appeals might be necessary, for the enforcement or the protection of the rights of the corporation; in other cases conservatory process might be necessary, such as writs of arrest, attachment, provisional seizure, sequestration, injunction. In all such cases bonds must be given by the appellant, and by the party asking for such writ or process; and it was only by the new charter, act of 1871, p. 227, that the city of Shreveport was dispensed with giving bond or security in judicial proceedings where, by law, such bond is required of litigants. The mayor and trustees might find it necessary to let property, to obtain the use of buildings necessary for municipal purposes on lease, to acquire or to convey real or personal property, to arbitrate, or to compromise. · It might be necessary, in the administration of municipal affairs, to make contracts for the several public purposes contemplated and provided for in the charter, and pertaining to the police power, work on the streets, wharf, public buildings, etc. In such cases contracts reduced to writing, signed by the parties, are usual and proper, binding the contractor to perform faithfully his engagements, and obligating the corporation to pay him as stipulated.

The act of 1839, section ten, required the treasurer and collector to give security for the faithful performance of their respective duties; but it failed to prescribe the form in which such security should be given.

It was eminently proper, therefore, that the mayor and trustees should be specially authorized to give such bonds as might be required of them as litigants, or as parties to a compromise or arbitration; and that it should be made the duty of the mayor to sign such bonds; and also to sign such notes as it might be necessary to give for the rent of buildings, or offices for municipal purposes, and such other obligations as might be requisite to the proper execution of the several powers enume-

rated; and that they should be. empowered to take and receive such bonds with security as would guarantee the fidelity of the custodians of the funds of the corporation.

The limitation on the power of taxation excludes the idea of any intention on the part of the Legislature to confer upon the mayor and trustees authority to issue notes, or bonds, or other obligations to be put upon the market to raise money; and the whole context shows that the bonds and notes, and other obligations referred to, meant such engagements only as were within the means and resources of the corporation, as provided by the charter, necessary in the ordinary course of administration of municipal affairs.

As early as 1855 the Legislature, by a general law, No. 263, p. 325, imposed a wholesome restriction upon the extravagance of municipal corporations by enacting, section four, p. 326: " That the police juries of the several parishes, and the constituted authorities of incorporated towns and cities in this State, shall not hereafter have power to contract any debt or pecuniary liability, without fully providing, in the ordinance creating the debt, the means of paying the principal and interest of the debt so contracted."

This law continued in force, and was re-enacted, *ipsissimis verbis,* in the Revised Statutes of 1870, sections 2448, 2786.   What an immensity of extravagance, corruption, wastefulness, unnecessary and grievously burdensome taxation, bankruptcy, moral and financial ruin might have been spared to the people of Louisiana if this wise law had been observed and enforced !

Corporations, like individuals, may imagine they require many things, which really can well be dispensed with, or the enjoyment of which may be deferred until they have the means to gratify their tastes and their wishes. The one and the other must learn to live within their means and resources; and those who fail to observe this rule of common sense and common honesty disappoint no one when they become hopeless bankrupts.

It might have been convenient for the town of Shreveport to own stock in the Gas Light Company; but the lighting of the streets did not make it necesssary for the corporation to become a stockholder in that company. , The acts of incorporation enable the corporation to acquire property; but there is no occasion for the contracting of a debt in order to exercise this right.   With money in hand, property may be acquired on advantageous terms; those who have not the money, should wait until they have it, or use their credit only when the means of meeting the debt at maturity are provided and are certain.   The Legislature meant to compel the observance of. this much of honesty by municipal corporations, by prohibiting the contracting of debts by them without

fully providing for the payment of principal and interest in the ordinance by which the debt is created. We shall enforce that law, whenever it is in our power, and occasion may require.

Those who contract with municipal corporations, know that these bodies act validly only within the powers conferred upon them by the special laws by which they are created; and the creditor of a corporation is bound to see that the contract or obligation, of which he claims the benefit, is within the power which the corporation may lawfully exercise. The fact that the obligation is in the shape of a negotiable instrument, or that it was acquired in good faith, for a valuable consideration, before maturity, in no manner enlarges the power of the corporation, or gives any additional force or validity to its unauthorized acts. It may be added, however, that plaintiff purchased these bonds, at fifty cents on the dollar, at sheriff's sale, under execution, on a judgment against his debtors, who, as he alleges, pledged them to him as security.

The ordinance under which these bonds were issued made no such provision for the payment of the principal and interest as the law imperatively requires. The second section of the ordinance set apart ten thousand dollars a year from the revenues derived from the wharf as a sinking fund; but the mayor and trustees, within a week after its passage, repealed this section of the ordinance; and, without levying any new or additional tax, set aside ten thousand dollars out of the taxes of each year as a sinking fund. The bonds were for one hundred and fifty thousand dollars, on which the interest, at eight per cent, would be twelve thousand dollars; so that it would have required twenty-two thousand dollars to pay the interest and to provide for the retirement or redemption of ten thousand dollars of the bonds the first year. Upon the hypotheses that ten thousand dollars would be provided for each year, the amount required for the first year, twenty-two thousand dollars, would have been diminished by eight hundred dollars only each year. The statement in the bonds that the city, "for the faithful payment has pledged all the revenues derived from the taxation of real estate and personal property," is not more obligatory than the promise to pay; and it could be disregarded with equal facility and impunity. What the law means by "providing fully in the ordinance for the payment of principal and interest," it has taken care to explain in very simple terms. The succeeding section, five, of the act of 1855, says: "The ordinance or enactment providing for the payment of the principal and interest of any debt created by any board of police, or authorities of incorporated towns and cities, shall remain in full force until the debt and interest is paid."

These two consecutive sections of the act of 1855 are re-enacted in the same order in the Revised Statutes, sections 2448, 2449, 2786, 2787. The

succeeding section, six, in the act of 1855, likewise re-enacted in corresponding order in the Revised Statutes, shows that the Legislature intended that a tax, sufficient to pay the debt and interest in full, should be imposed by the ordinance which created the debt; and it empowered the proper judge, at the instance of the creditor, to enforce payment by compelling the corporate authorities to collect the special tax, just as other taxes were collected. It was under the dominion of this law that these bonds were issued; and by this law they must be tested.

The bonds sued on were issued without legal warrant or authority; they were issued in contempt and in flagrant violation of sections four and five, No. 263 of the act of 1855, a prohibitory law; they are not obligations which can be enforced in a judicial tribunal, they are absolute nullities.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there be judgment in favor of the city of Shreveport, appellant, defendant, against J. D. Wilson, appellee, plaintiff, rejecting his demand, and dismissing his petition, with costs in both courts.

Mr. Justice Egan having been of counsel, takes no part in this decision.