## Case No. 17,948.

### WOOD v. LOUISIANA.

[5 Dill. 122.] [1]

Circuit Court, E. D. Missouri. 1878.[2]

MUNICIPAL CORPORATIONS—INVALID BONDS—REMEDY OF PURCHASER—IMPLIED ASSUMPSIT.

A municipal corporation issued bonds valid on their face, but in fact void, because they were antedated to evade the registration act, and were not registered. The corporation had power to borrow money, and the proceeds of the bonds passed into the city treasury and were used for lawful purposes. *Held,* that the corporation was liable in an action for money had and received to the purchaser of the bonds or his assignee, not for the amount of the bonds, but for the amount of money actually paid for the bonds to the corporation, with simple interest thereon.

[Cited in Gause v. City of Clarksville, Case No. 5,276; s. c., 1 Fed. 357. Distinguished in Hall v. Scott County, 7 Fed. 342. Cited in Dorian v. City of Shreveport, 28 Fed. 295; Morton v. City of Nevada, 41 Fed. 588.]

This was an action for money had and received by the defendant from the plaintiff [Thomas J. Wood] in part, and in part from the plaintiff's assignors. The city received the moneys sued for as the consideration of certain bonds issued by it, and antedated so as to evade the local registration act of March, 1872, which was construed in Anthony v. Jasper County [Case No. 488]. Apparently the bonds were valid. If the true date had been that named in the bonds, no registration was necessary. The bonds were never registered, and for this reason the city repudiated any obligation to pay them. The plaintiff and his assignors did not know that the bonds had been antedated. The defendant demurred to the petition.

C. H. Krum, for plaintiff.

David Wagner and D. P. Dyer, for defendant.

TREAT, District Judge. This is a suit for money had and received by the defendant from the plaintiff and plaintiff's assignors. The officers of the defendant, in order to evade the Missouri act of March, 1872, requiring registration, antedated certain bonds, which subsequently were bought by the plaintiff and his assignors, in open market, at ninety cents on the dollar. Those bonds were void for nonregistry. If they had not been antedated—that is, if they had been executed and issued in fact as on their face they purported to have been—they would have been valid and obligatory.

As the city had power to borrow money for the purposes defined in its charter, is it to be held liable for the money thus borrowed through sale of bonds which were void from noncompliance with the registry act? The fraudulent contrivances of the defendant's agents, whereby through invalid

¹ [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

² [Affirmed in 102 U. S. 294.]

bonds they obtained the money of the plaintiff and his assignors, ought not to preclude the plaintiff from recovery, if he was a bona fide holder for value, to the extent that the defendant actually received the money therefor, provided there was lawful authority to borrow money for the purpose for which the same was received and used. If money was obtained by the defendant through such invalid contrivances, and the same could have been lawfully borrowed in another manner, and if the money thus procured was received and used for lawful purposes, why should not the defendant be held liable? The bonds, as stated, were invalid, as such, and no suit could be maintained thereon. They were bought, innocently, in the open market, from the duly constituted and recognized agents of the defendant, at the rate named, and the net sum received (eighty-five cents on a dollar) passed into the city treasury and was disbursed for lawful purposes. Full and detailed reports of receipts and disbursements concerning the same were made from time to time, and received the sanction of the mayor and city council. There is no doubt that the plaintiff, as to all except two of the bonds, bought them directly from the city's agents, at the rate named, and paid to said agents accordingly. As to the other two bonds, the facts are that they were sold under like circumstances to the respective assignors of the plaintiff, at the same rate, and subsequently bought of said assignors, bona fide, for the same price.

It is of the first importance to bear in mind, however, that the city could neither borrow nor expend money except when authorized by its charter and the law. It cannot set up the fraudulent or unlawful contrivances of its agents, whereby plaintiff's money was procured and used for lawful purposes, as a defence in this action, if the plaintiff or purchaser was not in pari delicto as to said wrongful conduct.

As to the bonds bought not directly from defendant's agent, the assignee is subrogated to the rights of the assignor. This has been settled in this circuit (Shirk v. Pulaski County [Case No. 12,794]), and if not directly adjudged, at least broadly intimated, by the supreme court of the United States.

The next inquiry is not free from doubt. The fund commissioner was not to sell the bonds for less than eighty-five per cent. of their face value. He did pay that sum to the defendant, five per cent. having been used for commissions and expenses of sale. The city was prohibited from increasing its debt, but was bound to meet its existing indebtedness. To meet that indebtedness and current expenses, including the expenses of negotiating this loan or borrowing the sum needed, the plaintiff's ninety per cent. was received. That sum, therefore, was had and lawfully applied, and the defendant must answer therefor. Of course, the plaintiff can receive interest only at the rate of six

per cent. on the sum so advanced by him or his assignors, from the date when payment of interest ceased.

It is unnecessary to distinguish, more clearly, this case from one where, through the fraudulent acts of a municipal agent, money has been procured by him for unlawful purposes, or through him passed to the municipality for unlawful objects and been so used. The doctrine, not of fraud alone, would, in such a case, have to be considered with reference to the respective parties, but also the doctrine of ultra vires.

The case before the court is, in its worst aspects, simply this, to wit: A procurement through unlawful means of a given sum of money, which was received by the principal and by the latter lawfully used; the lender being innocent that the means used were invalid. A municipality can exercise no powers not conferred upon it, nor can it resort to forbidden means to accomplish a prohibited result. It necessarily acts through agents, and it is important that such agents should be restricted in their agency to prescribed modes of action. But suppose they violate such prohibitions, or transcend wilfully the restrictions imposed on them, yet the fruits thereof, being received by them, are applied to the lawful objects of the municipality; and suppose the lender, in ignorance of any fraudulent devices of the kind, parts with his money in good faith, and the municipality has had and used the money so procured for lawful purposes, or still has it in its treasury, shall it refuse to refund the same?

It is not necessary to go into an inquiry in this case as to matters wherein an agent on one side, and the party dealing with him on the other, are in pari delicto. Here we have the recognized agents of the city undertaking to raise funds for lawful purposes, and by antedating the bonds raising said funds, giving, as evidence of the money borrowed, bonds which, for statutory reasons, could not be enforced as bonds. The purchaser of said bonds, or (what is the same) the lender to the borrowing city, parts with his money, which the city received and lawfully used, although the purchaser or lender received as evidence of what he advanced the bonds on which he could not recover directly; is he, therefore, to lose the money so by him loaned and used by the city? One who deals with a municipality must be sure that it is acting within its corporate powers. If its agents are acting beyond such powers, he deals at his peril.

If the municipality has the power to raise funds for prescribed purposes, but is forbidden to raise them in the manner adopted by its agents, may the innocent lender hold the city liable as for money had and received, notwithstanding the funds came into its possession through prohibited means used by its agents? Here a technical question is encountered. If the lender knows that the means are unlawful (taking cognizance of the law as to said means), shall he have the aid of the court to recover? But if, through the designed fraud of the city's agents, he is innocently misled into the purchase of the bonds, which on their face are outside of the prohibitions of the statute, and the city receives the avails thereof, and uses such avails in a lawful way, shall he be remediless?

The broad distinction must be recognized between an effort to enable a municipality to exceed the limits fixed to its indebtedness, and a resort to prohibited means to raise funds for a lawful purpose. It was a positive requirement that the obligations of the city should not exceed a· specified amount, with exceptions as to past indebtedness. It was also a positive requirement that future bonds should be registered in conformity with the act of March, 1872.

It appears from the evidence that the bonds in question, heretofore pronounced invalid for nonregistry, were the means through which plaintiff's money went into the treasury of the city, and was used for lawful purposes; and it appears also that the purchaser of the bonds did not know of the false antedating. The rules invoked concerning the relationship of vendor and vendee in open market, as to municipal bonds, cannot affect this case; for those rules pertain solely to vendors (other than the obligors) and their vendees. The obligor's liability still remains, and depends on considerations entirely distinct from those arising between an ordinary vendor and vendee.

This is a suit as between the obligor of the bond and the assignee thereof. The bond being for statutory reasons void, the ·assignee is not protected by the law merchant. The equities of the original transactions are open, and evidence thereon has been had. The assignee being subrogated to all the rights of the first assignor, may recover from the obligor what he (that assignor) actually paid, and no more. He cannot recover on the bond, because that was invalid, and hence not obligatory, but is entitled to a recovery of what the city actually received from the first vendee of the bond. If ninety cents on a dollar were paid, as heretofore stated, that is the amount of the recovery, with six per cent. interest on what is due. Dill. Mun. Corp. § 730, and notes.

Judgment accordingly.

See Gause v. Clarksville [Case No. 5,276.]

[This case was taken by writ of error to the supreme court, and the judgment was there affirmed. 102 U. S. 294.]