## DORIAN, Adm'x, *v.* CITY OF SHREVEPORT.

*(Circuit Court, W. D. Louisiana. August, 1886.)*

MUNICIPAL CORPORATIONS—BONDS ISSUED FOR WORK DONE—LIABILITY TO ASSIGNEE IN ABSENCE OF POWER TO ISSUE COMMERCIAL PAPER.

Under a power vested by statute in a municipal corporation, whereby it may contract for the making of public improvements, and issue its bonds in payment for the work performed, a bond so issued for work actually done becomes a voucher or evidence of indebtedness to that extent, and may be recovered upon by an assignee in good faith, even though such corporation had never been specifically empowered to issue negotiable paper.

At Law.

*Hicks & Hicks,* for plaintiff.

*F. G. Thatcher* and *E. H. Randolph,* for the City.

BOARMAN, J. Plaintiff sues to recover a debt of $3,000, with interest, due to Dorian by defendant, a municipal corporation. The debt is alleged to be due because defendant employed Robson & Baer to grade, and otherwise improve, certain streets, which they satisfactorily performed. Plaintiff shows that the contractors agreed to receive, and the city agreed to pay, for the work, one-half in cash, and the other half in 10-year bonds; that three of such bonds, purporting to be commercial paper, for $1,000 each, were issued and given to contractors; that these bonds came into the hands of Dorian in due course of trade, for value, and before their maturity; and that interest was paid to him for several years by defendant.

The bonds are as follows:

"Know all men by these presents that the mayor and trustees of the city of Shreveport acknowledge to owe ———, or bearer, one thousand dollars, lawful money of the United States; which the said mayor and trustees promise to pay at the comptroller's office, in the city of Shreveport, on the first day of October, A. D. 1869, with interest at the rate of 8 per cent. per

annum, payable semi-annually, at the bank of New York, on presentation of the coupons hereto attached. For the faithful performance of this obligation the faith and property of the corporation of Shreveport are irrevocably pledged, and a tax is ordered to be levied upon all the taxable property of said city annually to pay said interest, and to create a sinking fund to pay the principal when the same becomes due. This bond is issued in obedience to an ordinance of the mayor and trustees of said city, adopted on the third of June, 1869, for the purpose of raising means to make such improvements as the growth of the city demands.

"In witness whereof this bond is signed by the mayor and comptroller of said city of Shreveport, and approved by the finance committee, and the seal of the city affixed, the first day of October, A. D. 1869.

"J. B. GILMAN, Mayor.

"C. H. SPILKER, Comptroller.

"Approved:
    "T. H. MORRIS.
    "J. C. MONCURE.
    "J. N. HOWELL."

Indorsement on the bonds:

"This bond is one of two hundred of like denomination, and the ordinance under which they are issued provides for their payment, as well as the payment of interest, as required by law, by setting apart from the revenues of the city thirty-six thousand dollars annually to pay such interest punctually, and to create a sinking fund to pay the principal."

The preamble of the ordinance of June, 1869, shows the following purpose for issuing the bonds:

"That in order to meet the demands of the city, and to provide the means for making such permanent improvements upon the streets and wharves of the city as its growth and increase require, * * ‘ that, in order to fully provide for the payment of the principal and interest of said bonds, as the board is required to do by law, there shall be set apart from the revenues of the city, semi-annually, the sum of eight thousand dollars, to meet the payment of the interest upon said bonds as the same becomes due; and to meet the payment of the principal of said bonds there shall be set apart from said revenues the sum of twenty thousand dollars annually, as a sinking fund; and in order to raise the amount of interest as it becomes due, and the amount necessary to create the said sinking fund, it shall be the duty of the mayor and trustees of the city to levy annually upon all property in the city of Shreveport such amount of tax as shall fully provide for the payment of said interest, and the creation of said sinking fund, in addition to the payment of the current and ordinary expenses of the city government."

Subsequently the necessary ordinances for letting out the work performed by R. & B. were passed. The written agreement in evidence shows that they were to be paid, one-half in cash, and one-half in the 10-year bonds, of which the three held by Dorian are a part. The city, being unable to pay all of the cash payment, gave a note, which was subsequently paid. There is no dispute that the public work was in every way satisfactory. The petition does not sharply define or set out plaintiff's cause of action. The merit of the demand, illustrated as it is by the pleading and evidence, seems to be, substantially, that the contractors to whom said bonds were given performed cer-

tain work, for which the city, acting within the scope of its corporate powers, agreed and bound itself to pay; that the work having been performed, accepted, and used by the city, the law imposes an obligation on it to pay for it; that the obligation, never having been discharged, is exigible against defendant; that the transfer of the said bonds, given as they were to evidence said debt against the city, carries with it the right to enforce the payment of the same; that the rights of the contractors are now in Dorian, to whom the city paid semi-annually the interest, as it became due, for several years; that, in law and equitable dealing, the debt evidenced by said bonds being justly due, with no equitable defense disclosed against them, it is of no consequence to defendant who sues for the enforcement of the obligation. In addition to this summary of plaintiff's cause of action it is claimed that the city, in the exercise of governmental powers, being fully authorized to contract for the work performed by R. & B., had the power to execute its negotiable bonds to pay for the same, and it is liable on the bonds as commercial paper.

Defendant urges no equitable defenses, but relies for relief on the following grounds: (1) That the corporation is not liable for the debt, if any was contracted by the city, because the authorities incurring the debt failed to make provisions for its payment in accordance with Revised Statutes, § 2448, which prohibits towns and cities from contracting any debt or pecuniary liability without fully providing in the ordinance creating the debt the means of paying the same; (2) that the city had no power, express or implied, in the laws or charter, to issue such bonds for any purpose, and they evidence no obligation against the city.

There is no theory on which the debt contracted with R. & B. is affected by novation, unless the defendant treats the bonds as commercial instruments; and it is not now necessary to consider the matter of novation. Whether the bonds held by Dorian are valid as commercial instruments or not,—upon which matter we do not think it necessary to pass in this case,—they are and should be treated, under the authorities hereinafter cited, as such vouchers or evidences of debt as the city may lawfully give to her creditors to evidence obligations incurred within the scope of her governmental powers; and they are such as may be transferred from hand to hand by delivery, giving the holder the right to sue on them. Considering them only as entitled to the character of such papers, it follows that the holder, obtaining them in due course of trade, before he can recover on them, should show that the city sufficiently complied with the requirements of section 2448, Rev. St. The bonds recite that that law was complied with.

In *Oubre* v. *Donaldsonville*, 33 La. Ann. 386, the defendant, a municipal corporation of this state, being sued on her bonds, among other defenses, urged that the bonds were void because the city did not comply with that statute. Oubre, to show a compliance with

the statute, relied on this ordinance: "That an annual tax of one thousand dollars be levied on all real estate of the corporation of Donaldsonville, and that the same be set aside to form a sinking fund to pay said consolidated debt." It was contended that this ordinance was not sufficient, because it was unconstitutional, in the fact that it imposed a tax only on real estate. The court, after saying that this statute was not intended as a trap to catch unwary creditors, said, whatever may be the correct view as to the constitutionality of the ordinance, "there can be no doubt that at the time the corporate authorities, and the creditors, and all concerned, honestly believed, and had reason to believe, that the tax directed to be levied on real estate was a valid and constitutional tax.   *   *   * Were we to decide now that the corporation authorities and creditors were mistaken in their honest belief that the particular provision made was constitutional, we would not on that account feel justified in holding that the debt of the town, contracted in good faith, and, to the extent of the provision, in intended conformity with the law, was stricken with nullity. Justice would require that an honest mistake, shared in by both parties, should not operate to the advantage of one, and to the destruction of the other."

The same remarks can well be made as to the parties in this suit. If the ordinance in this case seems to leave something to be effected by supplemental ordinances, the city alone was able to supply them. Indeed, the law would be a trap for unwary creditors if she is allowed, in this case, to enjoy all the advantage of her errors, and the plaintiff to be visited by all of the destruction. If the bonds are treated as commercial instruments, the statute (section 2448) would not affect their validity, because the city would be estopped by the recitals in the securities. She would not be allowed to deny the declaration therein made that the law had been complied with. *Louisville, etc., R. Co.* v. *Letson,* 2 How. 539; *Mercer Co.* v. *Hacket,* 1 Wall. 83; *Grand Chute* v. *Winegar,* 15 Wall. 355; *San Antonio* v. *Mehaffy,* 96 U. S. 314.

At the time the contract was entered into with R. & B. the city was authorized to erect public works and buildings, for the use and benefit of the town, as they may find expedient; "to give bonds, and receive bonds;" to levy a tax,—not limited, after 1853, until 1871,—annually, for the improvement and well-regulating of the town. The mayor was required to sign "all notes and obligations." The authorities were empowered, "from time to time, to enact such by-laws and ordinances, *not inconsistent* with the laws and constitution of the state, and of the United States, as they may deem proper, in relation to the public markets, or to the landings and streets and highways therein, keeping in order and improving the same;   *   *   *   and they shall have *power, generally,* to make all other rules and regulations as may relate to the good ordering, government, improvement, and police of the town;   *   *   *   to open and extend, pave, plank, macadamize,

or otherwise improve and adorn, the streets, alleys, or wharves of the city."

It appears that the legislature invested the city with "powers of the most ample description," as was said in *Reynolds* v. *City of Shreveport,* 13 La. Ann. 426, to conserve all the purposes of its organism; and the works contracted for with R. & B., for which the bonds were intended to be used, were certainly within the scope of these ample powers. Keeping in view the purposes for which municipal agencies are created, and noting particularly the extent of the grant of power to defendant corporation, can it be said that a fair and logical interpretation of her powers, express and implied, forbids the opinion that the defendant had, prior to 1869, the power to contract a debt for grading and otherwise improving her streets, and to give in evidence of debts so contracted her bonds, "notes, or other obligations," to the contractors.

In the courts of Lousiana, as well as in the federal courts, it has often been affirmed that corporations, possessing such powers as the defendant, have ample authority to issue vouchers for money due, notes or certificates which evidence the sums due for services rendered to them, or orders or drafts drawn by one city officer on another, or any other device of the kind used in liquidating the amounts due the city's creditors; that such powers are necessary for carrying on the machinery of municipal administrations, and for anticipating the annual collections of taxes. *Wall* v. *Monroe Co.,* 103 U. S. 78; *Claiborne Co.* v. *Brooks,* 111 U. S. 408; S. C. 4 Sup. Ct. Rep. 489; *Mayor* v. *Ray,* 19 Wall. 468.

In *Mayor* v. *Ray,* 19 Wall. 468, the suit was brought by an assignee of a number of warrants drawn on the city treasury. They were in the form of negotiable instruments. Some of them had been taken up and reissued; but that fact, though important in that case, is but of little consequence here, except to show how such papers may be issued to a city's creditors. The circuit judge held that the city could, in the exercise of the ordinary governmental powers of municipal corporations, execute commercial paper to evidence her lawful debts. In considering the power of a corporation, possessing only the powers ordinarily expressed or implied in city charters,—as was the case before them,—to issue paper clothed with the attributes of negotiability, the supreme court was evenly divided; but four of the judges, eight then sitting, agreeing upon another point, united in reversing the judgment of the circuit court. In that case four of the judges held that a municipal corporation could not, in the absence of express or clearly implied powers, issue any promise to pay, that, in the hands of anybody, would be protected by the law-merchant; but all the judges concurred in the opinion "that certificates of debt, warrants, orders, checks, drafts, and the like, used for giving the public creditors evidence of the amount of their claim, are valid instruments for that purpose, and may be transferred from hand to hand." There

seems to be no difference of opinion as to the power of municipal corporations to issue, for debts lawfully due by them, such vouchers, papers, or instruments as we have cited above; but there is a conflict of opinion as to their power, without express authorization, to issue any paper, call it by what name you will, that, in a suit like this, will forbid the equitable defenses to be heard.

Whether defendant is vested with power or not to issue such bonds as would be protected by the law-merchant, we think we are authorized to treat these evidences of indebtedness, given as they were by the city to R. & B., and now held in good faith by Dorian, as belonging to the kind of instruments which the city can lawfully issue, under her governmental powers. "If the power to purchase be established, the power to give the evidence necessary to secure the price necessarily ensues; whether the credit be long or short is a matter of indifference." *Law* v. *Smith,* 2 R. I. 244. "The note given to plaintiff being a contract made by defendant in the course of their legitimate business, no express authority in their charter was necessary to enable them to make it." *Carroll* v. *Graham,* 8 R. I. 245; Ang. & A. 145; Dill. Mun. Corp. 13. These principles of law have been applied to the defendant city in several cases reported. *Bosworth* v. *New Orleans,* 26 La. Ann. 495; *Edey* v. *City of Shreveport,* Id. 636; *Reynolds* v. *City of Shreveport,* 13 La. Ann. 426.

In *Britton* v. *Police Jury,* 15 Wall. 570, it was held "that a municipal corporation, which is expressly authorized to make expenditures for certain purposes, may, unless prohibited by law, make contracts for the accomplishment of the authorized purposes, and thereby incur indebtedness, and issue proper vouchers therefor. This is a necessary incident to the express powers granted." *Wall* v. *Monroe Co.,* 103 U. S. 78; *Dair* v. *United States,* 16 Wall. 6; *Henry* v. *Deitrich,* 84 Pa. St. 287; *Galveston R. R.* v. *Cowdrey,* 11 Wall. 470; *State* v. *Anderson Co.,* 8 Baxt. 249; *Hammer* v. *McConnel,* 2 Ohio, 31; *Seybert* v. *City of Pittsburg,* 1 Wall. 273; *Meyer* v. *City of Muscatine,* Id. 391.

In *Seybert* v. *Pittsburg,* 1 Wall. 273, defendant city had power to subscribe to a railway company, and issued in payment negotiable bonds. The corporation resisted payment of the bonds on the ground that she had no express or implied power to issue the bonds. The court said that the power to subscribe was a power to create a debt, and to give evidence of the debt. "* * * If they legally owed the debt, it follows they can give a bond for it." Considering it established that the defendant was fully authorized to give such instruments as those discussed in *Britton* v. *Police Jury,* 15 Wall. 570, and *Mayor* v. *Ray,* 19 Wall. 473; to acknowledge her indebtedness to R. & B., and recognizing her inability to issue for any purpose commercial paper,—can the fact that the mayor and trustees (the city's agents) saw fit to issue paper purporting, as in this case, to be a commercial instrument, instead of a non-negotiable promise to pay, *invalidate* the

obligation which the law imposed on the city to pay for the work satis-factorily performed by R. & B., and which the people of the city now enjoy? The city agreed to pay half cash and half in these bonds. Will the fact that a negotiable, instead of a non-negotiable, note was given by her agents relieve her from paying a debt contracted within the scope of her powers? The city authorities may have transgressed the power of their mandate, but the fact remains that the contractors are unpaid and the city enjoys the benefit of their labor. Municipal corporations are not free from the restraints of law. The principles of fair dealing apply to them as well as to individuals. When they act within the scope of their powers to contract they should not be allowed to enrich themselves at the expense of persons who contract with them, and perform valuable services.

In *Clark* v. *Des Moines*, 6 Amer. Law Reg. 149, to which we will refer further on, Judge DILLON said, in discussing the defenses of a municipal corporation: "It is the duty of courts not to allow the honest and just merits of a cause to be entangled in the meshes of sophistical reasoning and rules purely technical." It is a matter of but little consequence to defendant who sues for the enforcement of the debt evidenced by these bonds.

In *Claiborne Co.* v. *Brooks*, 111 U. S. 400, S. C. 4 Sup. Ct. Rep. 489, the plaintiff, an assignee in good faith, sued the county to re-cover on a negotiable bond, issued, as the proof in that case showed, to Sturm for building a court-house. The bond was like the bond held by Dorian. Payment was resisted because the "county had no authority to issue a negotiable interest-bearing bond such as is sued on," and defendant did not owe the debt. The circuit court held that the county could issue such a bond to evidence a debt contracted within the scope of her lawful power. The supreme court said:

"From the instructions requested by defendant, and those given by the court, * * * we gather that the real controversy was whether the de-fendant could set up against the assignee of the bond the defense—such as payment—which would have been good against Sturm, (who had performed the public work,) the original payee, as to whom evidence was given tending to show that he had received from the county all that he was entitled to, in-dependently of the bond sued on. Unless that was the real controversy, we do not see the relevancy of the charge; for if the right of the defendant to set up the defense which he had against the bonds in the hand of Sturm was not denied or disputed, we do not see of what importance *the particular form* of the instrument would have been. But if the form was relied on as preclud-ing any such defense, then the charge was clearly material, and had a decided bearing on the case."

The court, holding that the county had ample power to incur a debt for the public work, recognized the power as incident to the power to contract,—the right to give a promise to pay; that, while the county did not have express or implied power to issue commercial paper for any purpose, "the document sued on [the negotiable bond, in this case] may very well have served the purpose of a voucher to show a

stated account between Sturm and the county, and may be of such a form as to be assignable by indorsement; but it must be liable, in whosesoever hands it may come, to be open to examination as to its validity, honesty, and correctness."

The suit of *Clark* v. *Des Moines,* elsewhere referred to, was to recover on a number of city warrants, issued for various purposes. Clark purchased them. They were in form commercial paper, and he resisted the setting up equitable defenses, and the lower court sustained his objection, and gave him judgment. Judge DILLON, rendering the opinion, agreed with the lower court that Clark stood in the shoes of the original payee, but denied the power of the city to issue commercial paper. Some of the warrants had been issued to take up change notes, issued by the city in violation of law. The court held, if the change notes had been paid out by the city, for valid debts against the city,—the warrants for which those notes were surrendered,—the law would regard this as a settlement of the transaction, and the particular warrants would be supported by a sufficient consideration, and be valid and binding. 6 Amer. Law Reg. 196.

In the case of *Galveston* v. *Hitchcock,* 96 U. S. 341, the city caused a number of sidewalks to be built, and agreed to pay for the work in bonds known as "Galveston City Bonds, for Sidewalk Improvements," and set aside as a special fund the money collected from the owners of property so improved. The city, after Hitchcock had completed some of the work, made him quit, and he sued for damages. The city's defense was that she "had no express authority to make the contract in question, or to issue bonds in payment of the work done thereunder, and none can be implied from the general powers; that the contract to pay in bonds was void." The circuit court held the contract not binding on the ground of *ultra vires.* The supreme court said:

"If it were conceded that the city had no lawful authority to issue the bonds described in the ordinance, and mentioned in the contract, it does not follow that the plaintiffs have no rights under it. They are not suing on the bonds, and it is not necessary that they should assert the validity of those instruments. It is enough for them that the city council have power to *enter into a contract* for the improvement of the sidewalks; that such contract was made with them; * * * that the city has received, and now enjoys, the benefit of what they have done; that for these things the city promised to pay. It matters not that the promise to pay was in a manner not authorized by law. If payment cannot be made in bonds, because their issue was *ultra vires,* it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law. The contract between the parties is in force so far as it is lawful. * * * At most there was a defect of power. The *promise* to give bonds to the plaintiffs in payment for what they undertook to do was, at furthest, *ultra vires;* and in such a case, though specific performance of an engagement to do a thing transgressive of its corporate powers may not be enforced, the corporation can be held liable on its contract." 96 U. S. 341.

"Although there may be a defect in the power of the city *to make a contract,* yet, if a contract made by it is not in violation of the charter, or of any statute prohibiting it, and the corporation has, by its promises, induced a party relying on the promise, and in execution of the contract, to expend money, and perform part thereof, the corporation is liable on the contract." *State Board* v. *Citizens' St. Ry. Co.,* 47 Ind. 407; *Allegheny City* v. *McClurkan,* 14 Pa. St. 81; *Maher* v. *Chicago,* 38 Ill. 266; *People* v. *Ransom,* 2 N. Y. 490; *Argenti* v. *San Francisco,* 16 Cal. 256; *Matter of Whitaker,* 4 Johns. Ch. 379.

The only difference between the present case and the suit of *Hitchcock* v. *Galveston* is the fact that the first holder of the bonds, Hitchcock, sues instead of an assignee. That fact does not forbid the principles of law announced therein to be applied here.

Under the authority presented in the cases cited, particularly in *Claiborne Co.* v. *Brooks,* we are warranted in treating the bonds held by Dorian "as vouchers for money due,—certificates of indebtedness for services rendered, or for property furnished, for the use of the city,"—and Dorian, under the authorities following, stands in the shoes of the original payee. *People* v. *Supervisors,* 11 Cal. 170; *Sturtevant* v. *Liberty,* 46 Me. 457; *Smith* v. *Cheshire,* 13 Gray, 318; *Brewster* v. *Hyde,* 7 N. H. 208; *Moore* v. *Sinks,* 2 Ind. 257; *Inhabitants, etc.,* v. *Weir,* 9 Ind. 224; *Willim* v. *Bernheimer,* 5 Minn. 290, (Gil. 229;) *Simms* v. *Hervey,* 19 Iowa, 288.

The doctrine announced in these state cases is affirmed in *Woods* v. *Louisiana,* 5 Dill. 122, and in *Gause* v. *Clarksville,* 5 Dill. 180. In the latter case the suit was on the city's bonds. They had been sold to Gause's assignor, in open market, to raise money, and they were said by the court to be invalid, and no basis for recovery; but the court said the assignee was entitled to recover against the city, in an action for money had and received, if it was shown that the money paid by the assignor had been expended in public works which the city was authorized to contract for. Dill. Mun. Corp. 720; *Paul* v. *City of Kenosha,* 22 Wis. 266; *Wilkinson* v. *Babbitt,* 4 Dill. 208; *Oneida Bank* v. *Ontario Bank,* 21 N. Y. 490.

Technically, Dorian is not suing for money had and received. His case does not show that bonds were put on the market to raise money. It shows that the bonds in his hands, whether they of themselves could be a basis of recovery or not, were used by the agents of the city to procure valuable improvements; and it is not disputed that those agents had ample power to contract for such works as R. & B. performed. While these bonds were in the hands of the plaintiff the city provided in the annual budget for a tax to pay the interest, and it was paid to Dorian, as it became due, ior several years, and he should be treated as the subrogee of R. & B., who contracted to work for the city, and to take these bonds in payment.

Considering that the debt was lawfully contracted; that the statute (section 2448, Rev. St.) was sufficiently complied with; that the city

received the benefit of the contract, and has never, in any way, extinguished the debt which was to be evidenced by these bonds; and that these bonds, by whatever name they may be called, carry to R. & B.'s assignees whatever rights they might now enforce,—we think judgment should be for the plaintiff.

We are urged to consider the cases cited by counsel from state courts of Louisiana. *Capmartin* v. *Police Jury*, 23 La. Ann. 191; *Breaux* v. *Parish of Iberville*, Id. 235; *Oubre* v. *Donaldsonville*, 33 La. Ann. 388; *Wilson* v. *City of Shreveport*, 29 La. Ann. 675. There is nothing in any of them to forbid us believing the act (section 2448, Rev. St.) was sufficiently complied with in this case, and the doctrine that a municipal corporation may lawfully execute a promissory note, or other certificate, to evidence a debt contracted for such public works as its charter authorizes, is affirmed wherever it is discussed in those cases.

The bonds sued on in the case of *Wilson* v. *City of Shreveport*, 29 La. Ann. 675, were issued some years before the bonds in this suit. They were held not to be a basis of recovery. The city defeated them on two grounds—*First*, that the city gave them in payment for gas stock for which a debt could not be lawfully incurred by the city; *second*, that the statute (section 2448) had not been complied with. On these defenses the supreme court protected the city. The court in that case said that, while it was within the power of the mayor to sign and bind the city on "such notes as it might be necessary to give for rent of buildings or offices for municipal purposes, and such other obligations as might be requisite to the proper execution of the several powers enumerated," it had no power to issue bonds or notes for the purchase price of gas stock. Of course, if the city had no power to buy gas stock, no lawful debt could be incurred by such a purchase, and a note, negotiable or not negotiable, could not be collected against the city. The city officials thought it well, for the "good ordering and improvement of the town," to purchase gas stock; but the court, on that matter of city administration, thought differently, and rejected the bonds used for the purchase of the stock. The court did not seem to think there was any occasion for contracting such a debt. Besides, it was held in that case that section 2448, Rev. St., had not been complied with. The court denied the power of the city to issue bonds for the purpose of raising money; but there is nothing in the opinion which forbids us to hold that, as in the present case, the city had the power to contract for the work performed by R. & B., to incur a debt therefor, and to give her notes to evidence such a debt; and we believe the assignee has a right in this suit to enforce the collection of that debt.

Judgment for plaintiff.