## HOLMES *v.* CITY OF SHREVEPORT.

*(Circuit Court, W. D. Louisiana.* 1887.)

**MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—BONDS—BONA FIDE PURCHASER—PRINCIPAL AND AGENT.**

The defendant city, being authorized by its charter to contract for certain public works, agreed to pay to certain contractors one-half cash, and the balance in 10-year coupon bonds, for performing said works. A number of such bonds were issued in pursuance of said agreement, and this suit was brought by persons to whom these bonds before their maturity were transferred. *Held*, that the officials of a municipal corporation, which is vested with the usual powers of such bodies, are authorized to issue bonds or promissory notes to evidence the credit price of any works for which they are authorized to contract, which in the hands of a *bona fide* holder, will be protected by the law-merchant; that the express authority in an agent to buy, provide for, or procure a thing for his principal, carries with it the implied power to give the latter's negotiable note for the price of the thing, and that this rule of law applies to the officials or agents of such corporations.

*(Syllabus by the Court.)*

At Law.

*A. H. Leonard* and *A. D. Land*, for plaintiff.

*Alexander & Blanchard* and *E. H. Randolph*, for defendant.

BOARMAN, J. By agreement jury waived, and the four cases consolidated. The pleadings, issues, and facts in this case are substantially the same as those in the case of *Dorian* v. *City of Shreveport*, 28 Fed. Rep. 287. The bonds and ordinances relating to their issuance were fully recited in that case. The several statutes vesting powers in the defendant city make up the charter by which we are to test and measure the liability of the corporation for the acts of its agents in entering into the contracts in pursuance of which the bonds held by plaintiff were executed. Dealers in municipal bonds, or other such securities and evidences of indebtedness, are charged with notice as to the power of the corporation to incur and bind the city for the debt evidenced by such instruments.

Under the agreements made with the several persons to whom these bonds were issued, they were to do certain public work in the way of grading or otherwise improving the streets of the city, and were to be paid half in cash, and the balance in the 10-year bonds at par. The work was satisfactorily performed, and the indebtedness evidenced by these bonds has never been paid. The defense is in the nature of a demurrer. The defendant, offering no evidence, relies upon two grounds for relief: *First*, upon the plea *ultra vires; second*, upon the prohibitory act of 1855, which forbids a municipal corporation to incur a debt without providing, in the ordinance creating the debt, the means of paying the principal and interest. The law *ultra vires* is a shield to the tax-payers of a corporation. When properly administered, it will enable them to avoid the payment of a debt, whatever may be the form of the instrument used to evidence the liability which has been contracted beyond the scope of the corporate powers. The reason and force of this principle of law lies in the fact that the power to bind the corporation for a debt carries with it the power to pay the debt out of the revenues collected from the tax-payers, and no tax can be collected to pay a debt not lawfully binding on the corporation. Hence the plea *ultra vires* will be good against the payment of such a liability.

Municipal corporations possess the following powers: *First*, powers granted in express words, and such as are necessarily or fairly implied from the language used in enumerating and vesting the several express grants; *second*, such powers as are essential to the declared purposes of the corporation. In the statutes which make up the charter of defendant city at the time these bonds were issued, we find powers expressly given of a more extensive kind than usually belong to city governments. Among them we find the power "to erect such public works and buildings for the use and advantage of the town as they may deem expedient; * * * to give bonds and receive bonds which shall be as effectual in law as other bonds given under the laws of the state; to levy an annual tax [not limited in amount, from 1853 until after the time these bonds were issued] for the comfort, improvement, and well-regulating of the town." The mayor was required to sign all notes and other obligations binding on the corporation. The mayor and trustees "have power, from time to time, to enact and provide for the promulgation of such by-laws and ordinances, *not inconsistent with the laws and constitution of the*

*state and United States*, as they may deem proper, in relation to the pub
lic markets of said town, to the landings, streets, alleys, and highways
therein, and to the opening, widening, draining, filling up, keeping in
order, and improving the same; * * * to open, extend, pave, plank,
macadamize, or otherwise improve and adorn the streets, alleys, and
wharves of the city."

In *Reynolds* v. *Shreveport*, 13 La. Ann. 426, the court held that the
city could incur a debt for grading the streets, and, in discussing the
powers we have mentioned, said they were "of the most ample descrip-
tion."

In the face of these liberal grants to defendant city, it cannot be de-
nied that the agents of the corporation were fully authorized to contract
for the public works performed by the several contractors to whom the
bonds were issued. The numerous authorities cited in the *Dorian Case*,
some of them from the courts of Louisiana, show abundantly the power
of the city's agents to give warrants, vouchers, or other evidences of in-
debtedness, binding on the city, to anticipate the current revenues, and
to evidence the amounts due, on a credit, whether it be long or short,
in pursuance of contracts for public works, made by the city's agents
within the scope of their official powers.

The defendant, among other cases, cites the case of *Wilson* v. *City of
Shreveport*, 29 La. Ann. 675. A careful consideration of that case does
not appear to avail anything for the defense against the bonds now held
by plaintiff. In that case the bonds were alleged in themselves, as com-
mercial paper, to be a basis for recovery. Those bonds were issued in
1867. The interest was being paid on them at the time these bonds were
issued, and the court decided the suit on them in 1877. In this case
the bonds were issued in 1869, and the city provided for and continued
to pay the interest on them, to any one holding them, until 1878. When
the bonds came into the hands of the plaintiff, the Wilson suit had not
been filed, and there was nothing known in the history of their origin,
issue, or treatment by the city to depreciate them, or in any way dishonor
them in public confidence or in commerce. All the parties to the con-
tract were in good faith, and, if the city's agents had no authority to bind
the corporation on such instruments for debts lawfully due public cred-
itors, neither the city, nor the persons who performed public work, nor
the public, knew or suspected the absence of such powers. It is in evi-
dence that the city's agents, at the time these bonds came into the hands
of plaintiff, had been for many years issuing commercial notes or bonds,
and that the constituents of the corporation had from time to time been
paying the interest and principal of the same. The payment of the an-
nual interest on these bonds to any holder of them, however willingly
it may have been paid, could not, if the bonds were given to evidence a
debt not lawfully binding on the corporation, operate in law as a ratifi-
cation of them, or of the unlawful debt; nor would the city for that rea-
son be forbidden in law to deny or refuse to pay them. If the debt to
evidence which they were executed was not such a debt as would be
binding on the corporation, then no obligation to pay it on the part of

defendant ever existed, and no acts of the city officials in paying interest on them could amount to a ratification by the constituents of the corporation.  But if the debt be lawfully due, it seems that the principles laid down in *Portsmouth Sav. Bank* v. *City of Springfield*, 4 Fed. Rep. 276, may be applied in this case.   In speaking of city bonds which were *irregularly issued*, Judge DRUMMOND said:

"All questions of doubt in relation to the validity of these bonds should be answered in favor of their legality, because the city has recognized their validity repeatedly, and has paid the interest on them for a series of years. Therefore, under such circumstances as these, it should appear beyond all doubt that the issue of the bonds was void.  *  *  *   It has issued the bonds, obtained the money, and the benefits it has conferred, and law and equity declare that the debt should be paid."

The opinion in the *Wilson Case*, 29 La. Ann. 675, shows that the bonds he sued on were given to evidence the purchase price of gas stock which the city's agents had purchased for the corporation.    The plea *ultra vires* was sustained, because the court thought there was no authority in the city's agents to purchase gas stock, and consequently they could not bind the corporation for the debt.    If it be true that the corporate authorities were without power to buy gas stock, it could not have been a matter of much  consequence to the court, in that case, whether the bonds sued on were in the form of commercial paper or not.    It is evident from the reasoning of the court that the corporation would have been liable for the debt incurred in the purchase of the gas stock, but for the absence of the power to contract for such stock.

If the court had found that the city's agents were authorized expressly, or by implication, to bind the corporation for a debt contracted by them for the purchase price of gas stock, there is nothing in the opinion of the court to induce us to believe that the mere form of the instruments, used by the agents to evidence the corporation's promise to pay for the gas stock, would have been sufficient to release the corporation from its lawful obligation to pay to the vendor or to his assignees the amount due them.    The defendant was released in that case on the plea *ultra vires* because the court substantially said there never was any liability incurred by the acts of the officials in purchasing such property; that there was no obligation sanctioned by law, and no recovery could be had.

But defendant contends that such bonds as these purport on their face to be, when issued for anything or to any person, are void.    Conceding it to be true that the corporation had no authority to execute notes or bonds for any purpose, which would be entitled judicially to the protection of the law-merchant, does it follow that where the city's agents and all the parties to a *contract sanctioned by law agree to give and take such instruments* as would be so protected, that the instruments so given, and now held against defendant, are for all purposes void?   Will the fact that those agents exceeded their power *only* in agreeing to give such instruments, or exceeded their power *merely and only* in the selection of the means of evidencing the debt due the contractors, invalidate and extinguish the obligation lawfully incurred by the corporation?   If no

debt, sanctioned by the law, could be incurred for such public work as the grading and otherwise improving the city's streets, then it would be a matter of no consequence to the city, or to the constituents of the corporation, what sort of evidences of the debt were issued to the persons doing the work, for the plea *ultra vires* would shield them against the debt. But the plea, if the debt is lawfully due and unpaid, will not protect the corporation against the payment of the debt because *of an irregularity or error* on the part of the city's agents in giving *commercial notes* instead of *non-commercial* vouchers or warrants. To give such an effect to the plea, whoever may be the parties to the contract, or whatever may be the irregularities in the instruments used to evidence a lawful debt, would be as unwarranted in good conscience as it would be novel in the administration of justice.

In the *Dorian Case* we held that the bonds are not void and without effect; that, if they were not in law entitled to the credit and force of commercial paper, they certainly, under the authorities cited, may be treated as evidences of simple obligations in favor of the persons holding them. When we tried that suit, the several suits now submitted had not been presented. The bonds in the *Dorian Case* did not amount to an appealable sum, and it was known that the series of bonds now sued on were outstanding against the city. Under such circumstances, I thought it best to rest the court's opinion on the validity of the bonds as evidencing, in favor of the *bona fide* holder, a simple obligation against defendant. In that case a written opinion, sustaining the validity of the bonds in the way just stated, was submitted to Judge PARDEE, who certified his concurrence in the reasoning and conclusion therein.

In the *Dorian Case* the plaintiff contended that the corporate authorities, having ample express power to provide, secure, and contract for the public work performed by the contractors to whom the bonds were issued, had also the implied power to issue to them commercial instruments, and that these bonds, being of such a character, are in themselves a legal basis for recovery; the same point as urged in this case. Considering that the public work for which it is agreed these bonds were issued was satisfactorily performed, that no equitable relief is sought by defendant, and that all the suits to be covered by this opinion are for appealable sums, I have less hesitancy now than I had when the *Dorian Case* was tried in taking up and passing upon the validity of these bonds as commercial instruments.

The authority of the defendant's agents to secure and provide for certain public works is found in the express powers of the corporation. Out of those powers come, by implication, the authority to give promissory notes binding on the corporation. The implied powers, when deducible from the interpretations the law puts upon the meaning or extent of the express powers, are as good authority for the acts of an agent as are the express authorizations in the mandate.

In this state it has frequently been held that an agent authorized to buy a thing may give his principal's note for the price.

In *First Municipality* v. *McDonough*, 2 Rob. (La.) 244, the court say:

" If the power to purchase be established, the power to give the evidence necessary to secure the price necessarily ensues, and whether the credit be long or short is a matter of indifference."

In *Brode* v. *Firemen's Ins. Co.*, 8 Rob. (La.) 244, the court holds that the notes given to plaintiff being a contract made by defendant in the course of their legitimate business, no express authority is necessary in the charter to enable them to make it. "The city of Shreveport, having the right to purchase real estate under its charter, had the power, *which was an implied one*, to execute the note for the credit part of the purchase, and to give a mortgage and vendor's privilege." *Edey* v. *City of Shreveport*, 26 La. Ann. 636. "The city of Shreveport having the authority to buy property, carries with it by implication the authority to give notes for the price." *City of Shreveport* v. *Flournoy*, 26 La. Ann. 709.

The several cases applying to defendant city, cited from this state's courts, were decided when the charter powers to purchase real estate were the same as they were in the charter existing at the time these bonds were issued; and it cannot be said that the express power to purchase real estate, and the implied power in the city's agents to give promissory notes for the purchase price, is more clearly expressed or implied in the charter then existing than was the power of the same agents to execute and bind the corporation on such notes for the credit price of works performed, or for material furnished, for improvements on the streets. The state court, in deciding that the city's agents were empowered to bind the corporation on notes given for the purchase price of the thing they were authorized to buy or provide for the city, were applying well-known rules in the law of principal and agent,—that is, that the power to bind the principal by giving his promissory note for the price of the thing which he is expressly authorized to secure or furnish is an implied and incidental power; and, if such a power is not prohibited, the agent will be considered as possessing it by implication.

It is known that the judicial authorities, as well in the federal as in the state courts, are not uniform in their rulings upon the matter we are considering. This difference does not exist because of difficulties found in applying the law of agency, but largely upon the question as to whether the law of principal and agent should be applied in considering the liability of a municipal corporation for the acts of their agents. If the power in the officials of a municipal corporation to do or procure a thing is sufficient, as in this case, it seems there can be no reason why, in fixing the liability of the corporation, the law of principal and agent should not be applied.

In two cases—one, *Police Jury* v. *Britton*, 15 Wall. 570; the other, *Mayor* v. *Ray*, 19 Wall. 469—the subject-matter of the pending suit was fully discussed. In the former the plaintiff, a *bona fide* holder of certain bonds, sued upon them as commercial instruments, and payment was resisted on the plea *ultra vires*. Justice BRADLEY, finding no express power in the defendant to issue such bonds, said:

"We have, therefore, the question directly presented in this case whether the trustees or representative officials of a parish or county or other local jurisdic-

tion, vested with the usual power of administration in specific matters, and the power of levying taxes to defray the necessary expenses of the jurisdiction, have an implied authority to issue negotiable securities, payable in the future, of such a character as to be unimpeachable in the hands of *bona fide* holders, for the purpose of *raising money* or *funding* a previous indebtedness."

The commercial securities in that case were issued for the purpose of "funding previous indebtedness;" and the court, not finding any express power to issue the bonds, said, to issue commercial securities for such puposes does not belong to the governmental purposes of a parish, and therefore could not be considered as an implied power. The court in so holding announced a general principle, which forbids the authorities of municipal corporations, possessing only the usual governmental powers, in the absence of express powers, to issue bonds, whether in a commercial form or not, to raise money, or to fund outstanding indebtedness, under the exercise of implied powers; because to issue bonds for such purposes is not within the scope of such a corporation's governmental powers. But the court, in order that the principle announced, and upon which the bonds were held invalid, should not be extended too far, said:

"We do not mean to be understood that it requires in all cases express authority for such bodies to issue negotiable paper. The power has frequently been implied from other express powers granted. Thus it has been held that the power to borrow money implies the power to issue the ordinary securities for its repayment, whether in the form of notes or bonds payable in the future. So the power to subscribe for stock in a railroad, or to purchase property for a market-house, and other like powers, which cannot be carried on without borrowing money or giving obligations payable in the future, have been held sufficient to raise the implied power to issue such obligations."

In *Mayor* v. *Ray*, 19 Wall. 468, Justice BRADLEY, delivering the opinion, held that defendant corporation, possessing, as it did, only the usual governmental powers, could not issue commercial notes, or otherwise bind the city for borrowed money, because no such power existed among the implied powers of the corporation; that the power to borrow money was not germane to the powers expressly given, and was not a power necessary to carry out the purposes of the city government. In reading the opinion and conclusion of the court, it will be apparent that it could not have been a matter of consequence to Justice BRADLEY, and the three justices who agreed with him, whether the bonds sued on in the *Britton Case*, or the drafts or notes in the *Ray Case*, were in a commercial or negotiable form or not. For them it seemed to be enough to know that the defendant corporation had no power to issue funds to take up outstanding indebtedness or to borrow money, and could not be bound by the officials to pay it, whatever may have been the sort of instruments used between the parties. In the *Ray Case* the court was composed of eight judges. Four of them dissented. Among them was Justice HUNT, whose written opinion is reported, in which he said:

"I hold it to be well established by the authorities that a municipal corporation may borrow money for the legitimate use of the corporation, and that it may issue its notes for the same, unless expressly prohibited by its charter,

or by some statute, from doing so. The proposition that it cannot borrow money unless expressly authorized to do so, is, in my opinion, unsustained by sound authority." "That securities thus issued by municipal corporations are subject to the rules of commercial law, when held by *bona fide* holders, has been repeatedly held by this court."

Justice HUNT thought Ray was not a *bona fide* holder before maturity, and agreed to have the case remanded for the purpose of letting in equitable defenses. On the other issues the court was evenly divided.

Whatever conflict of opinion there may be among the courts and judges as to the power of the agents of a municipal corporation, possessing only the usual governmental powers, to bind their constituents by the issuance of commercial bonds, or any other evidences of indebtedness, for borrowed money, or on bonds issued to take up outstanding indebtedness, we are, after a very careful and general examination of authorities, unable to find a single case in which the power of the city's agents to execute negotiable or commercial instruments, or promissory notes, to evidence the credit price of a thing which they were authorized to secure, provide for, or purchase, was judicially denied.

In *Desmond.* v. *Jefferson*, 19 Fed. Rep. 486, plaintiff sued on bonds issued for the purchase price of a fire-engine; alleged them, as commercial securities, to be a legal basis for recovery. Defendant resisted payment on the plea *ultra vires.* The defendant city possessed the usual governmental powers. Among these powers was the power "to organize a fire department, and to regulate the same." The court thought the defendant, having the power to organize a fire department, had ample power to buy an engine, and give such securities for the purchase price, and said:

"There is no case to be found where, if the power is given by specific grant or by necessary implication, to provide for or buy the thing, the courts have held that this character of paper is not obligatory upon the municipality."

In *Seybert* v. *City of Pittsburg*, 1 Wall. 273, the defendant city had power to subscribe to a railway company "as fully as any individual." The corporation was sued on negotiable bonds, issued for subscription to the company, and resisted payment on the ground that her agents were not authorized to issue the negotiable bonds. The court said the power to subscribe was a power to create a debt, and consequently to give evidence of the debt. The power to subscribe in such a way was given, and, if they legally owed a debt, it follows that they can give a bond for it.

The power in that case was broadly given. So in the pending case it would seem that the power to pass all ordinances not inconsistent with the laws of the state, which the city's agents may deem proper in relation to such public works as were performed by the contractors to whom these bonds were given, considered with the fact that the same agents could collect taxes, unlimited in per centum or gross sum, annually, for the well-regulating of the town, should, we think, enable the authorities to secure such public works in any way that agents are, in law, usually empowered to act for their principals.

The weight of authorities upon the power of a municipal corporation to execute bonds, to be placed on the markets for the purpose of raising money to be expended by the city's agents, or for the purpose of funding outstanding indebtedness, seems to be generally against the exercise of the power, except in cases where the power is derived from legislative authority, expressed or implied. The reason for such ruling is well known to be in the fact that municipal corporations are established to enable the people residing in towns and cities to have the benefits of local government. Unlike trading or busines corporations, their powers, unless otherwise directed by express or implied grant, should be, and are, in law as well as in public policy, limited to such as are governmental or administrative in their nature and scope; to such as are necessary to conserve the purposes of their organism.

So far as the contractors to whom these bonds were originally given are concerned with their issue, it cannot be said that they were issued for the purpose of *borrowing money*, or for the purpose of *funding outstanding* indebtedness of the city; for it is not denied that they were given to the contractors in pursuance of an agreement to the effect that one-half of the amount due them for the public work should be paid in cash, and the balance should be evidenced as a debt against the city by the 10-year negotiable bonds, some of which are now held by plaintiff. The contractors agreed to take commercial securities, and, as such securities are known to be more valuable in commerce than instruments not protected by commercial law, it may be fairly presumed that the fact that such bonds were to be given to them, instead of non-commercial securities, enabled the contractors to perform the work, and entered largely, if not in a controlling way, into their ability, motive, and reason for undertaking the public works. If it be conceded that the city's agents had power to incur a debt sanctioned by law against the corporation for such works as the contractors in this instance faithfully furnished and performed, it does not seem to be inconsistent with public policy, nor at variance with the jurisprudence of Louisiana, or the decisions of the United States courts, to hold that they are authorized, in the implied powers of their mandate, to evidence such a debt by giving such commercial notes or bonds as are now held by plaintiff.

In reaching our conclusion in the *Dorian Case*, as well as in this suit, we have kept in mind the rule which seems to be generally observed when the federal courts are employed in interpreting the powers of municipal corporations to lawfully incur a debt; that is, that doubts, if there be any, as to the power of the city's agents to incur the particular debt, should be charged to the plaintiff or obligee. But in deciding now in favor of the validity of these bonds as commercial securities, it cannot be said that we are imposing upon or enforcing against the constituents of the corporation *a debt doubtful in its origin, or one not lawfully incurred, or one not justly due to somebody;* because it is clear enough that the debt is unpaid, and that the city's agents had ample power to ordain and direct that the public work should be done, and to legally bind the corporation for the debt; that is, for the price of the public work.

It being conceded that the city had ample authority to contract, and bind the corporation to pay, for the public works which were performed by the contractors to whom these bonds were issued, I can see no reason, in law, for denying the city's power to clothe the bonds or promissory notes so issued with such attributes of negotiability as will place a *bona fide* holder of the bonds under the protection of the law-merchant. Under this view, it is not necessary to consider the prohibitory act of 1855, because, if the city had the power to issue such commercial securities, the recitals in the bonds are sufficient to forbid the court's considering the effect of that act. Judgment for plaintiff.