INTERNATIONAL TERMINAL OPERATING COMPANY, Inc., Appellant,

v.

SS VALMAS, her engines, boilers, etc., Appellee.

No. 10779.

United States Court of Appeals Fourth Circuit.

Argued Jan. 11, 1967.

Decided March 13, 1967.

. Edward B. Hayes, Chicago, Ill. (Robbert W. Williams, Baltimore, Md., Lord, Bissell & Brook, Chicago, Ill., and Ober, Williams & Grimes, Baltimore, Md., on brief), for appellant.

Robert D. Klages, New York City (John G. Poles, Poles, Tublin & Patestides, New York City, and Weinberg & Green, Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, SOBELOFF, Circuit Judge, and RUSSELL, District Judge.

SOBELOFF, Circuit Judge:

On this appeal we are called upon to decide whether libelant, International Terminal Operating Co., Inc., supplier of stevedoring services to the Greek vessel S.S. VALMAS, which was under subcharter to Enterprise Marine Co., is entitled to a maritime lien. The answer turns on a construction of certain provisions in the time charter party, dated June 23, 1964, between Compagne Naviere, the owner, and Alltransport, Inc., as charterer, and in the subcharter party, dated August 10, 1964, between Alltransport and Enterprise.

International Terminal Operating Co., Inc., was employed by Enterprise, under a contract executed on May 27, 1964, to perform general stevedoring services on vessels owned, operated, controlled or chartered by Enterprise.[1] Pur-

---

[1] Appellees—the owner and the time charterer—argue that this prior, *general* contract indicates that the stevedore did not rely on the credit of the vessel, since at the time the contract was made, the S. S. VALMAS had not yet been subchartered to Enterprise. We find no merit in this contention, however. In Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940), the libelant was under a general contract to supply "the fuel oil requirements of any and all vessels owned, chartered, or operated by W. L. Comyn & Sons." Subsequent to the contract's execution, vessels were chartered to W. L. Comyn & Sons to which libelant furnished fuel. The Court held that this did not prevent the creation of maritime liens for supplies actually furnished the vessels. See also Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co., 261 F.2d 861, 867 (5th Cir. 1958), which held that

since the furnishing of the supply, repair or necessary to the vessel was

suant to this contract, the stevedore unloaded cargo from the S.S. VALMAS when she was in Chicago under the management of Enterprise. In order to recover unpaid charges of $25,959 plus interest for the services supplied, the stevedore filed a libel in rem against the vessel. Both the owner and the time charterer claimed the vessel, and moved for summary judgment on the ground that by virtue of paragraph 18 of the time charter party and paragraph 17 of the subcharter party, Enterprise had no authority—and in fact was forbidden—to incur a maritime lien.[2] The libelant also moved for summary judgment, on the ground that nothing in either of the charters, correctly interpreted, prohibited Enterprise from incurring a lien on the vessel.

█ It is beyond dispute that absent the clauses in question, a lien would arise, since the Federal Maritime Lien Act, pertinent portions of which are set out in the margin,[3] provides that the supplier of "necessaries" shall be entitled to a lien on the vessel to which the "necessaries" are furnished.[4]

If inspection of a charter party would have shown that the charterer had no authority to bind the ship, a supplier of "necessaries" is charged by section 973 with knowledge of the provisions of the charter party forbidding the creation of a lien.[5] In the present case it is agreed that the stevedore did not seek to inspect the ship's papers, although they were readily available upon request, and thus failed to exercise the "reasonable diligence" required by section 973.

presumptively on the credit of the ship, a maritime lien arises unless it is affirmatively established that it was done solely on personal credit.

Moreover, the Federal Maritime Lien Act, 46 U.S.C. § 971 (1958), expressly states that it is not necessary to *prove* that credit was extended to the *vessel.* See note 3, infra.

2. Para. 18 of the time charter party reads:
    18. * * * Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel.
  Para. 17 of the subcharter party reads:
    17. Cargo is to be loaded, stowed, and discharged by the Charterers, free of risk and expense to the vessel.

3. 46 U.S.C. §§ 971–974 (1958).
    § 971. Any person furnishing * * necessaries, to any vessel * * * upon the order of * * * a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.
    § 972. The following persons shall be presumed to have authority from the owner to procure * * * necessaries for the vessel: * * * any person to whom the management of the vessel at the port of supply is intrusted. * * *
    § 973. The officers and agents of a vessel specified in section 972 of this

title shall be taken to include such officers and agents when appointed by a charterer, [or] by an owner pro hac vice * * *; but nothing in this chapter shall be construed to confer a lien when the furnisher knew, *or by exercise of reasonable diligence could have ascertained,* that because of the terms of a charter party * * * the person ordering the * * * necessaries was without authority to bind the vessel therefor. (Emphasis supplied.)
    § 974. Nothing in this chapter shall be construed to prevent the furnisher of * * * necessaries * * * from waiving his right to a lien * * * by agreement or otherwise * * *.

4. "Necessaries" include stevedoring services. In re North Atlantic & Gulf S. S. Co., 204 F.Supp. 899 (S.D.N.Y.1962), aff'd sub nom. Schilling v. A/S D/S DANNEBROG, 320 F.2d 628 (2d Cir. 1963); The Little Charley, 31 F. 120 (D.Md.1929); The Henry S. Grove, 285 F. 60 (W.D.Wash.1922).

5. Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940); United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361 (1923); S. S. Omnium Freighter v. Northwest Marine Ironworks, Inc., 341 F.2d 420 (8th Cir. 1965); Bimini Run Ltd. v. Belcher Oil Co., 336 F.2d 184 (5th Cir. 1964); Ocean Cargo Lines, Ltd. v. North Atlantic Marine Co., 227 F.Supp. 872 (S.D.N.Y.1964); Gilmore & Black, Admiralty, § 9–46, at 566 (1957).

Despite this failure, however, if the questioned documents do not deprive Enterprise of authority to permit a lien on the vessel, the stevedore is still entitled to a lien.[6]

The District Court ruled that paragraph 18 of the time charter party prevented Alltransport from incurring a lien, but that the prohibition did not extend to Enterprise as the subcharterer. The court nevertheless dismissed the libel on the theory that paragraph 17 of the subcharter party prevented the creation of a lien by Enterprise. From the summary judgment libelant appeals.

We agree with the District Court's holding that the stevedore is not entitled to a lien, although we reach this result by a somewhat different route.

The case principally relied upon by the vessel to prevent the attachment of a maritime lien, Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 310 U.S. 268, 280, 60 S.Ct. 937, 943, 84 L.Ed. 1197, (1940), held that to have this effect, the charter party must "provide therein that the creation of maritime liens is prohibited." In *Signal Oil,* the time charterers had agreed to "provide and pay for" fuel oil supplies. The Supreme Court held that this phrase was not adequate to prevent the creation of a lien for necessaries ordered by the charterer.

The Court implied that to bar a lien, it would be necessary to include a provision similar to that considered in United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361 (1923): that charterers "will not suffer nor permit to be continued any lien * * *."

The clause in *Carver* is substantially identical with paragraph 18 of the time charter party in the case before us, except that the latter includes the phrase "incurred by them or their agents."[7] Although the District Court held that paragraph 18 barred the creation of a lien by the charterers, it declared that because of this phrase, the provision was sufficient only to prohibit liens incurred by the time charterers "or their agents," and that the prohibition did not extend to the subcharterer.[8] We find this view unpersuasive; we read the words "or their agents" as words of emphasis, not of limitation. They imply no narrowing, but instead underscore the broad generality of the prohibition against liens.

■ Although the time charter contains a clause permitting the charterer to sublet the vessel during the life of the time charter party, it explicitly provides that the charterers are to remain "responsible for the fulfillment of this Charter Party." The charterer could not

---

6. Colonial Press of Miami, Inc. v. The Allen's Cay, 277 F.2d 540 (5th Cir. 1960); The Golden Gate, 52 F.2d 397 (9th Cir. 1931), cert. denied, 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576 (1932); Gilmore & Black, Admiralty, § 9–46, at 568 (1957).

7. In *Carver,* the charterer was to pay all costs and expenses incident to the operation of the vessels, and agreed "not [to] suffer nor permit to be continued any lien, encumbrance, or charge which has or might have priority over the title and interest of the owner in said vessel." 260 U.S. at 487–488, 43 S.Ct. at 181. Compare para. 18, in which the time charterers agree "not [to] suffer, nor permit to be continued, any lien or encumbrance *incurred by them or their agents,* which might have priority over the title, and interest of the owners in the vessel." (Emphasis supplied.)

8. Although appellants stated in oral argument that the words "incurred by them or

their agents" were deliberately inserted to forbid application of the prohibition to anyone but Alltransport, several cases which have involved prohibition of lien clauses identical with para. 18 have expressly stated that such a provision is a standard clause incorporated in the usual printed form. E. g., Walsh Stevedoring Co. v. M/S SLAGEN, 361 F.2d 478 (5th Cir. 1966); United States v. S. S. LUCIE SCHULTE, 343 F.2d 897 (2d Cir. 1965); Ocean Cargo Lines, Ltd. v. North Atlantic Marine Co., 227 F.Supp. 872 (S.D.N.Y. 1964); Gilmore & Black, Admiralty, § 4–14, at 204 (1957). The time charter in the present case, Libelant's Exhibit A, is a standard form (designated "Form 138, Government Form, Approved by the New York Produce Exchange") and the words "incurred by them or their agents" were not inserted by the parties, but are part of the printed document.

"grant to the sub-charterer rights beyond those which he has under his original charter from the owner * * *." Poor, Charter Parties & Ocean Bills of Lading § 20 (4th ed. 1954). Thus the subcharterer stands in the shoes of the charterer, and a subcharter party between Alltransport and Enterprise would incorporate by implication the terms of the time charter. It is difficult to square the exaction from the original charterer of the agreement prohibiting the creation of a lien with the notion that it was a matter of indifference if the subcharter should create a lien exposing the vessel to the very risk stipulated against. It would take very compelling language indeed to justify reading the time charter party as forbidding the charterer to suffer a lien against the vessel, yet tolerating its creation by any unknown subcharterer. The prohibition against permitting a lien is aimed not only at the charterer and his agents, but against permitting a lien by a subcharterer.

Alltransport, in accordance with maritime practice,[9] is described in the subcharter party as the *"Time-chartered Owner of the motor-vessel VALMAS."* Had the stevedore complied with the command of section 973 and inspected the ship's papers, it would have been put on notice of the existence of a prior charter party. Inspection of that document would have disclosed that Alltransport could not permit a lien to be created, and therefore could not grant Enterprise authority to do so. If Alltransport had purported to confer such authority, it clearly would have breached the terms of the time charter party. The stevedore, or other supplier of the vessel, reading the subcharter party and the time charter party to which attention was thereby directed, could hardly be misled into thinking that these documents left it the protection of a lien.

We find support for this view in Ocean Cargo Lines, Ltd. v. North Atlantic Marine Co., 227 F.Supp. 872 (S.D.N.Y. 1964), where a supplier of fuel oil sought to avoid the effect of a prohibition of lien clause in a time charter by arguing that since the voyage charter between charterer and subcharterer contained no prohibition of lien clause, the supplier was not barred from enforcing its lien. The District Court pointed out, however, that section 973 of the Federal Maritime Lien Act refers to a prohibition of lien by "the terms of *a* charter party." (Emphasis in Judge Feinberg's opinion.) The court therefore declared that

so long as a prohibition of lien is contained in *any* charter under which a vessel is operated at the time supplies are furnished to the vessel, a would be lienor is bound to exercise "reasonable diligence" in inquiring whether the supplies are ordered by the owner or by one having authority to bind the vessel.

227 F.Supp. at 878. (Emphasis in original.)

We leave open, as unnecessary to a decision here, the question whether, standing alone, the language of section 17 of the subcharter party, providing that cargo was to be loaded "free of risk and expense to the vessel" constitutes a sufficient bar to the creation of a lien, as our District Court thought, or is insufficient, as Judge Wisdom thought in addressing himself to identical language in Cooper Stevedoring of Louisiana, Inc. v. Pappadakis, 363 F.2d 352 (5th Cir. July 18, 1966).[10] For the disposition of the present case, it is enough that the charter party and the subcharter party together, which were available

---

9. See Ocean Cargo Lines, Ltd. v. North Atlantic Marine Co., 227 F.Supp. 872, 877 (S.D.N.Y.1964) and authorities cited therein.

10. In *Cooper Stevedoring*, the Fifth Circuit was confronted with only a single charter party, which contained a clause identical with para. 17 of the subcharter party in our case. It was there held that such a clause did not *explicitly* deny the authority of the charterer to incur a lien against the vessel, and thus would not *of itself* be sufficient to prevent a lien from arising.

on board the vessel and knowledge of the contents of which is attributable to the stevedore, conveyed ample notice that the lien was unauthorized.

The judgment of the District Court is

Affirmed.