**In re SS NORBERTO CAPAY and SS GALICIA DEFENDER.**

**No. 49228.**

United States District Court,
N. D. California.

Aug. 13, 1970.

Patmont & Myers, San Francisco, Cal., for First National City Bank.

Lillick, McHose, Wheat, Adams & Charles, with Anthony Cary, San Francisco, Cal., for Marine Midland Grace Co.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., with John Meadows, San Francisco, Cal., for the United States.

MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW RE CLAIMS OF FIRST NATIONAL CITY BANK

WOLLENBERG, District Judge.

Claimant herein is the First National City Bank (FNCB). FNCB, between 1955 and 1968, supplied travelers' checks to the Liberty Navigation & Trading Company. Such checks were to be used for wage advances to crew members who had the right, under their collective bargaining agreement, to receive such advances, when made in foreign ports, either in United States currency or in travelers' checks. The arrangement between FNCB and Liberty, during the period following October, 1966, called for reimbursement to FNCB for only those checks actually issued, after they were issued. The claim at hand is for some $22,730.00 in checks issued, and honored by FNCB, to crew-members of the SS NORBERTO CAPAY and the SS GALICIA DEFENDER. FNCB claims that it is entitled, under the Federal Maritime Lien Act, 46 U.S.C. §§ 971–75, to a lien on the above vessels for these "advances" of "ship's necessaries".

46 U.S.C. § 971 reads as follows:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries to any vessel * * * upon the order of the owner of such vessel * * * shall have a maritime lien on the vessel, which may be enforced by suit *in rem*, and it shall not be necessary to allege or prove that credit was given to the vessel."

The Marine Midland Grace Trust Company, the holder of first preferred mortgages on the above-named vessels, answers that the "advances" herein cannot be considered to be of "necessaries" within the purview of § 971. It further argues that even if the crews' wages fall under § 971, the facts of this case indicate that there was no reliance by FNCB on the credit of the vessels, and that the presumption of the statute should therefore be deemed overcome.

The questions herein have been extensively briefed by both parties, who have submitted depositions and exhibits to backstop their respective positions. The parties have, furthermore, agreed that the claims of FNCB may be decided by the Court without further trial or hearing. Before, however, rendering its Findings of Fact and Conclusions of Law as required by Rule 51, the Court deems it expedient to clarify the following points concerning the applicable law:

Marine Midland argues for a most restrictive interpretation of the concept of "necessaries". It cites venerable cases to the effect that the ship concerned must truly be in dire straits: at a foreign port, without funds, or otherwise unable to reach home but for the aid of the lien claimant. The Emily Souder, 17 Wall (84 U.S.) 666, 21 L.Ed. 683 (1873); The Allianca, D.C., 63 F. 726 (1894); The J. Doherty, D.C., 207 F. 997 (1913); The Muskegon, 2 Cir., 275 F. 348 (1921). From these cases, Marine Midland urges that "other necessaries" can only be interpreted in light of the requirements of the particular vessel.

■ While such a case-by-case approach might apply to such questionable items as "spiritous liquors" or "supplies for the slopchest", [see Benedict on Admiralty § 90 (1940) (fn. 90)] it seems somewhat outmoded in light of the amendment of the Lien Act in 1920 and of the general attitude of this circuit. See Gilmore and Black, The Law of Admiralty, pp. 542–43 (1957). Today, "[t]he present state of the law is not far from the point where any service which is 'convenient, useful and at times necessary' may qualify as a lien under the Lien Act." *Ibid.* When "necessaries" have been held to include stevedoring services, the work of a maritime surveyor, and even uniforms for crew members, it is beyond cavil that seamens' wages should enjoy the same status. International Terminal Operating Company v. SS Valmas, 4 Cir., 375 F.2d 586 (1967); Savas v. Maria Trading Corp., 4 Cir., 285 F.2d 336 (1960); The Artemis, 2 Cir., 53 F.2d 672, 679 (1931) ("[i]t is thus clear that the restrictive meaning of 'other necessaries' * * * has been enlarged under the Act of 1920, so that those words now cover * * * 'services' which are necessary for the operation or the preservation of the vessel").

Marine Midland argues in addition that FNCB is not entitled to the presumption of reliance upon the credit of the vessel which is accorded by 46 U.S. C. § 971 to persons furnishing ship's necessaries. Marine submits various affidavits and documentation to show that the travelers' check arrangement between FNCB and Liberty was but a part of a "continuing commercial relationship" which included a commercial account in Liberty's name, an unsecured line of credit, and at least three term loans by FNCB to Liberty. The implication we are asked to draw is that the travelers' checks were extended in consideration of these other arrangements rather than in reliance on the credit of the particular vessels concerned. The City of Salem, D.C., 31 F. 616 (1887).

■ Marine overlooks the full import of the 1920 changes in the Maritime Lien Act. Whereas the old law, represented by *Salem* and analogous cases, was that an advance to a vessel in its home port, or one made on the owner's order, was "furnished upon his personal credit and created no lien", the 1920 version of the Act provided that "it shall not be necessary to allege or prove that credit was given to the vessel". 46 U.S. C. § 971. The presumption thus created has been said to be so strong as to prevail "unless it is expressly agreed" that the personal credit advanced shall exclude the otherwise concurrent lien. Benedict etc. § 89; Todd Shipyards Corp. v. City of Athens, D.C., 83 F. Supp. 67, 90 (1949). International Refugee Org. v. Maryland Drydock Co., 4 Cir., 179 F.2d 284 (1950) is not necessarily to the contrary, since the lien claimant there had in no way restricted its advance to necessaries.

Here there was no "express agreement" that the lien was not to arise. Secondly, while there is no reference to security for the travelers' check arrangement in the documents pertinent thereto, there is a clear restriction of that arrangement to funds used to pay seamens' wages. Finally, the Court notes that the "continuing commercial relationship" invoked by Marine ended in early 1966; the travelers' check agreement itself was terminated on May 2, 1966. When the agreement was reinstated in July, 1966, it was done so independently of the other aspects of the "continuing relationship" which had existed. The particular checks involved here for which FNCB was not reimbursed were issued after the severance of the aforementioned relationship, and the relevance of the latter to the issue of reliance by FNCB on the credit of the vessel is thus considerably attenuated.

Accordingly, the Court makes the following findings of fact and conclusions

of law under Rule 51 of the Federal Rules of Civil Procedure:

### FINDINGS OF FACT

(1) The above described travelers' check arrangement between the Liberty Navigation and Trading Company and the First National City Bank was entered into subsequent to the conclusion of seamen's union contracts requiring wage draws to be paid in United States currency or travelers' checks.

(2) All of the travelers' checks delivered to Liberty by the First National City Bank were advanced for the purpose and with the understanding that they would be used for the payment of crew's wages.

[3] (3) The travelers' checks for which the First National City bank makes its preferred maritime lien claims in this action were in fact used for the purpose intended, i. e., the payment of crew's wages.

(4) FNCB claims priority lien status for $5,600.00 in travelers' checks issued by Captain Edward Moda to members of the crew of the SS Norberto Capay as and for wage advances during the period from June 14, 1967, to July 27, 1967. Midland Marine offers no evidence that this sum was not in fact expended for this purpose, and the Court finds that said moneys were advanced at the times indicated for and as wage advances to the crew of said vessel.

(5) FNCB also claims priority lien status for $17,130.00 in travelers' checks issued by Captain Thorre B. Terjersen to members of the crew of the SS Galicia Defender as and for wage advances during the period from October 1, 1967 to May 5, 1969. Marine Midland offers no evidence that this sum was not in fact expended for the purpose indicated, and the Court finds that said moneys were so advanced at the times claimed for and as wage advances to the crew of said vessel.

### CONCLUSIONS OF LAW

(1) First National City Bank advanced moneys in the amount indicated to the vessels named above for necessaries within the meaning of 46 U.S.C. § 971.

(2) Under 46 U.S.C. § 971, First National City Bank is not required to plead or prove that it relied, on the credit of said vessels when it made these advances. Marine Midland has failed to rebut this statutory presumption.

(3) First National City Bank is entitled to maritime liens on the above-mentioned vessels in the amounts previously indicated. First National City Bank will accordingly prepare forms of judgment in conformity with these findings.